**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
468 North Camden Drive
Beverly Hills, CA 90210
Telephone:  (818) 532-6499
E-mail: jpafiti@pomlaw.com
- *additional counsel on signature page* -

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM GRAVES, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>    vs.<br><br>AECOM, MICHAEL S. BURKE, W. TROY RUDD, and STEPHEN M. KADENACY,<br><br>Defendants | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff William Graves ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the defendants'

1

public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding AECOM ("AECOM" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

### NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired common shares of AECOM between February 11, 2015 and August 15, 2016, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

2.     AECOM together with its subsidiaries, engages in designing, building, financing, and operating infrastructure assets worldwide.   The Company operates through three segments: Design and Consulting Services (DCS), Construction Services (CS), and Management Services (MS).   The DCS segment provides planning, consulting, architectural and engineering design, program management, and construction management services for industrial, commercial, institutional, and government clients,

2

such as transportation, facilities, environmental, and energy/power markets.    The CS segment offers building construction and energy, as well as infrastructure and industrial construction services.    The MS segment provides program and facilities management and maintenance, training, logistics, consulting, technical assistance, and systems integration and information technology services primarily for agencies of the U.S. government and other national governments.

3.    The Company was formerly known as AECOM Technology Corporation and changed its name to AECOM in January 2015.    AECOM was founded in 1980 and is headquartered in Los Angeles, California.    AECOM common stock is traded on the New York Stock Exchange ("NYSE") under the ticker symbol "ACM".

4.    On October 17, 2014, AECOM announced that the Company had finalized its acquisition of URS Corp. ("URS" and the "URS Acquisition").

5.    Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies.    Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) AECOM engaged in fraudulent and deceptive business practices (ii) AECOM lacked effective internal controls over financial reporting; (iii) AECOM overstated the benefits of the URS Acquisition; (iv) AECOM overstated the Company's free cash flow ("FCF") per share; and (v) as a result of the foregoing, AECOM's public statements were materially false and misleading at all relevant times.

3

6.     On August 16, 2016, Spruce Point Capital Management ("Spruce Point") published a report on AECOM (the "Spruce Point Report"), stating that "after a careful forensic financial and accounting analysis of AECOM's recent financial results and condition, we believe that AECOM's stock is worth approximately 33% - 45% less than its current price."   Among other issues, the Spruce Point Report cited AECOM management's "misaligned incentive structure," pursuant to which the Company's "CEO's $18 million compensation in 2015 [was] heavily tied to its aggressive interpretation of its Free Cash Flow per share," and asserted that the Company had misrepresented the costs and benefits of the URS Acquisition.

7.     On this news, AECOM stock fell $1.65, or 4.7%, to close at $33.44 on August 16, 2016, damaging investors.

8.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9.     The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

10.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

4

11.     Venue is proper in this District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as a significant portion of the Defendants' actions, and the subsequent damages, took place within this District.

12.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

13.     Plaintiff, as set forth in the accompanying Certification, incorporated herein by reference, purchased common shares of AECOM at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosure.

14.     Defendant AECOM is incorporated in Delaware, with principal executive offices located at 1999 Avenue of the Stars, Suite 2600, Los Angeles, California 90067. The Company's common stock trades on the NYSE under the ticker symbol "ACM."

15.     Defendant Michael S. Burke ("Burke") has served at all relevant times as the Company's Chief Executive Officer ("CEO").

16.     Defendant W. Troy Rudd ("Rudd") has served as Chief Financial Officer ("CFO") of the Company since October 5, 2015.

17.    Defendant Stephen M. Kadenacy ("Kadenacy") served as the Company's CFO from October 1, 2011 to October 4, 2015, and has served as the Company's President since October 17, 2016.

18.    The Defendants referenced above in ¶¶ 15-17 are sometimes referred to herein as the "Individual Defendants."

19.    Defendant AECOM and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

20.    AECOM together with its subsidiaries, engages in designing, building, financing, and operating infrastructure assets worldwide.  The Company operates through three segments: Design and Consulting Services (DCS), Construction Services (CS), and Management Services (MS).  The DCS segment provides planning, consulting, architectural and engineering design, program management, and construction management services for industrial, commercial, institutional, and government clients, such as transportation, facilities, environmental, and energy/power markets.  The CS segment offers building construction and energy, as well as infrastructure and industrial construction services.  The MS segment provides program and facilities management and maintenance, training, logistics, consulting, technical assistance, and systems

integration and information technology services primarily for agencies of the U.S. government and other national governments.

21.    On October 17, 2014, AECOM announced the Company's completion of the URS Acquisition.

**Materially False and Misleading Statements Issued During the Class Period**

22.    The Class Period begins on February 10, 2015, when AECOM filed a Current Report on Form 8-K with the SEC, announcing certain of the Company's financial and operating results for the quarter ended December 31, 2014 (the "Q1 2015 8-K").[1]  For the quarter, AECOM reported a net loss of $103.50 million, or $0.73 per diluted share, on revenue of $4.19 billion, compared to net income of $56.54 million, or $0.58 per diluted share, on revenue of $1.95 billion for the same period in the prior year.

23.    The Q1 2015 8-K stated, in part:

"AECOM delivered strong operating results and wins in the fiscal first quarter due to our widely diversified business model," said Michael S. Burke, AECOM's chief executive officer.

Burke added, "We are pleased with our organic growth as we focus on the ***successful integration of our acquisition of URS***, which we completed in the quarter."

"We started the year by ***delivering strong free cash flow***," added AECOM President and Chief Financial Officer Stephen M. Kadenacy. "We began to repay debt during the quarter and are on track to achieve our long-term leverage target."

---

[1] AECOM's fiscal year consists of 52 or 53 weeks, ending on the Friday closest to September 30.

7

. . .

Cash flow from operations for the quarter was $283 million.   Free cash flow2, which includes capital expenditures of $30 million in the quarter, was $253 million.

. . .

AECOM is affirming adjusted EPS1 guidance for fiscal year 2015 of $2.75 to $3.35. The mid-point of the range assumes approximately $110 million of realized synergies from the URS combination.

(Emphases added.)

24.     On February 11, 2015, AECOM filed a Quarterly Report on Form 10-Q with the SEC, reiterating the information previously announced in the Q1 2015 8-K and reporting in full the Company's financial and operating results for the quarter ended December 31, 2014 (the "Q1 2015 10-Q").

25.     In the Q1 2015 10-Q, AECOM stated, in part:

URS contributed $2.0 billion in revenue and $83 million in income from operations during the three months ended December 31, 2014 since the acquisition date, included in the accompanying statement of operations. Amortization of intangible assets relating to URS was $45.2 million during the three months ended December 31, 2014 since the acquisition date. Additionally, included in equity in earnings of joint ventures and noncontrolling interests was intangible amortization expense of $8.4 million and ($4.7) million, respectively, during the three months ended December 31, 2014, related to joint venture fair value adjustments.

. . .

**URS Financing and Acquisition and Integration Expenses**

During the three months ended December 31, 2014, we incurred approximately $68.0 million of acquisition related financing expenses and $138.5 million of acquisition and integration expenses. The financing-

8

related expenses were recognized in interest expense and primarily consisted of a pre-payment penalty of $55.6 million, from the repayment of our unsecured senior notes, and $9.0 million related to the write-off of capitalized debt issuance costs from our unsecured senior notes, unsecured revolving credit facility, and unsecured term credit agreement.

. . .

We expect to incur approximately $220 million of amortization of intangible assets expense (including the effects of amortization included in equity in earnings of joint ventures and noncontrolling interests) and approximately $340 million of acquisition and integration expense and acquisition related financing expense in our fiscal year ended September 30, 2015.

26.     The Q1 2015 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Burke and Kadenacy, stating that the financial information contained in the Q1 2015 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

27.     On May 12, 2015, AECOM filed a Current Report on Form 8-K with the SEC, announcing certain of the Company's financial and operating results for the quarter ended March 31, 2015 (the "Q2 2015 8-K").   For the quarter, AECOM reported net income of $0.27 million, or zero per diluted share, on revenue of $4.51 billion, compared to net income of $40.19 million, or $0.41 per diluted share, on revenue of $1.87 billion for the same period in the prior year.

28.     The Q2 2015 8-K stated, in part:

"*We generated strong free cash flow* through the first half of the fiscal year," added AECOM's President and Chief Financial Officer Stephen M. Kadenacy. "This cash generation drove our debt reduction as we build on our track record of disciplined capital allocation."

9

. . .

Cash flow from operations for the quarter was $50 million. Free cash flow3 was $19 million in the quarter. In the first six months of the fiscal year, AECOM generated free cash flow of $277 million.

. . .

AECOM is increasing adjusted EPS guidance for fiscal year 2015 to $3.15 to $3.55. The increase reflects business trends that are consistent with the firm's prior outlook and includes the expected $0.30 net positive impact to EPS from acquisition-related accounting items. The mid-point of the range assumes approximately $110 million of realized cost-synergy benefits from the URS combination.

29.     On May 11, 2015, AECOM filed a Quarterly Report on Form 10-Q with the SEC, reiterating the information previously announced in the Q2 2015 8-K and reporting in full the Company's financial and operating results for the quarter ended March 31, 2015 (the "Q2 2015 10-Q").

30.     In the Q2 2015 10-Q, AECOM stated, in part:

Since the acquisition date, URS contributed $4.2 billion in revenue and $46.8 million in income from operations during the six months ended March 31, 2015. Amortization of intangible assets relating to URS was $93.4 million during the three months ended March 31, 2015 and $192.4 million during the six months ended March 31, 2015 since the acquisition date. Additionally, included in equity in earnings of joint ventures and noncontrolling interests was intangible amortization expense of $9.7 million and $(5.7) million, respectively, during the three months ended March 31, 2015 related to joint venture fair value adjustments and $17.8 million and $(15.2) million, respectively, during the six months ended March 31, 2015 related to joint venture fair value adjustments.

. . .

10

During the three months ended March 31, 2015, the Company updated certain provisional amounts reflected in the preliminary purchase price allocation, as summarized in the estimated fair values of URS assets acquired and liabilities assumed above. Specifically, the carrying amount of the intangible assets and the margin fair value liability discussed above were retrospectively increased by $161.6 million and $172.9 million, respectively. These measurement period adjustments require the revision of comparative financial information for the quarter ended December 31, 2014. The adjustments to intangible assets increased amortization expense for the three months ended December 31, 2014 by $53.9 million. The adjustments to the margin fair value liability increased revenue for the three months ended December 31, 2014 by $24.4 million. The net effect of these adjustments to noncontrolling interests was an increase of $2.3 million for the three months ended December 31, 2014.

31.     The Q2 2015 10-Q contained signed certifications pursuant to SOX by Defendants Burke and Kadenacy, stating that the financial information contained in the Q2 2015 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

32.     On August 11, 2015, AECOM filed a Current Report on Form 8-K with the SEC, announcing certain of the Company's financial and operating results for the quarter ended June 30, 2015 (the "Q3 2015 8-K").  For the quarter, AECOM reported a net loss of $17.19 million, or $0.11 per diluted share, on revenue of $4.55 billion, compared to net income of $69.24 million, or $0.70 per diluted share, on revenue of $1.97 million for the same period in the prior year.

33.     The Q3 2015 8-K stated, in part:

"We continue to execute well against the priorities we set at the beginning of the year," said Stephen M. Kadenacy, AECOM's president and chief financial officer. "***This marks the third consecutive quarter of strong cash***

11

*flow* and debt reduction and keeps us on track with our capital allocation priorities."

. . .

Free cash flow for the quarter was $150 million. In the first nine months of the fiscal year, AECOM generated free cash flow of $427 million.

. . .

AECOM is modifying its adjusted EPS2 guidance for fiscal year 2015, which is estimated to be $3.05 to $3.45. The change reflects lower non-cash normal profit estimates. Business trends underlying updated adjusted earnings guidance remain consistent with the firm's prior outlook. The mid-point of the range assumes approximately $110 million of realized cost-synergy benefits from the URS combination.

34.     On August 12, 2015, AECOM filed a Quarterly Report on Form 10-Q with the SEC, reiterating the information previously announced in the Q3 2015 8-K and reporting in full the Company's financial and operating results for the quarter ended June 30, 2015 (the "Q3 2015 10-Q").

35.     In the Q3 2015 10-Q, AECOM stated, in part:

Since the acquisition date, URS contributed $6.4 billion in revenue and $102.1 million in income from operations during the nine months ended June 30, 2015. Amortization of intangible assets relating to URS was $76.7 million during the three months ended June 30, 2015 and $269.0 million during the nine months ended June 30, 2015 since the acquisition date. Additionally, included in equity in earnings of joint ventures and noncontrolling interests was intangible amortization expense of $9.7 million and $(5.7) million, respectively, during the three months ended June 30, 2015 related to joint venture fair value adjustments and $27.6 million and $(20.8) million, respectively, during the nine months ended June 30, 2015 related to joint venture fair value adjustments.

12

36.   The Q3 2015 10-Q contained signed certifications pursuant to SOX by Defendants Burke and Kadency, stating that the financial information contained in the Q3 2015 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

37.   The statements referenced in ¶¶ 22 – 36 above were materially false and/or misleading because they misrepresented and/or failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) AECOM engaged in fraudulent and deceptive business practices (ii) AECOM lacked effective internal controls over financial reporting; (iii) AECOM overstated the benefits of the URS Acquisition; (iv) AECOM overstated the Company's free cash flow ("FCF") per share; (v) as a result of the foregoing, AECOM's public statements were materially false and misleading at all relevant times.

38.   In the Q3 2015 10-Q, AECOM stated, in relevant part:

URS Energy and Construction, Washington River Protection Solutions LLC and Washington Closure Hanford LLC, affiliates of URS, perform services under multiple contracts (including under the Waste Treatment Plant contract, the Tank Farm contract and the River Corridor contract) at the DOE's Hanford nuclear reservation that have been subject to various government investigations or litigation:

· Waste Treatment Plant government investigation: The federal government is conducting an investigation into our affiliate, URS Energy & Construction, a subcontractor on the Waste Treatment Plant, regarding

13

contractual compliance and various technical issues in the design, development and construction of the Waste Treatment Plant.

· Tank Farms government investigation: ***The federal government is conducting an investigation regarding the time keeping of employees at our joint venture***, Washington River Protection Solutions LLC, when the joint venture took over as the prime contractor from another federal contractor.

· Tank Farms government investigation:  The federal government is conducting an investigation into the circumstances surrounding the response of our joint venture, Washington River Protection Solutions LLC, to a leak within the tank farms of the Hanford nuclear reservation.

· River Corridor litigation:  ***The federal government has partially intervened in a false claims act complaint*** filed in the Eastern District of Washington on December 2013 challenging our joint venture, Washington Closure Hanford LLC, and its contracting procedures under the Small Business Act.

· Waste Treatment Plant whistleblower and employment claims:  Two former employees have each filed employment related claims against our affiliate, URS Energy & Construction, seeking restitution for alleged retaliation and wrongful termination.

(Emphases added)

39.    On this news, the Company's stock fell $0.49 per share, or 1.7%, to close at $29.46 on August 12, 2015.

40.    On September 2, 2015, United States attorneys filed a lawsuit against URS on behalf of the National Aeronautics and Space Administration alleging violations of the False Claims Act and seeking treble damages.  The complaint alleged URS and its subcontractor Yang Enterprises, Inc. ("Yang") "systematically defrauded the government" between 2009 and 2015, resulting in $387,000 in ill-gotten gains for URS

14

and Yang.  The alleged scheme involved more than 1,000 undocumented claims for the unnecessary replacement of car tires.

41.     On September 21, 2015, AECOM's Australian unit reached an A$280 million settlement of one of the largest misleading and deceptive conduct lawsuits in Australian history.  The lawsuit concerned AECOM's traffic forecasts for its RiverCity toll road project, which were alleged to be overinflated and unreasonable.  The toll road cost A$2.2 billion to build, but the significantly less-than-projected traffic flow upon completion led to the project's bankruptcy and the road's sale for only A$618 million.

42.     On this news, AECOM's stock fell $0.95, or nearly 3.5%, to close at $26.54 on September 22, 2015.

43.     On November 10, 2015, AECOM filed a Current Report on Form 8-K with the SEC, announcing certain of the Company's financial and operating results for the fiscal year ended September 30, 2015 (the "FY 2015 8-K").  For the quarter, AECOM reported net income of $1.06 million, or $0.01 per diluted share, on revenue of $4.72 billion, compared to net income of $64.03 million, or $0.64 per diluted share, on revenue of $2.56 billion for the same period in the prior year.  For fiscal year 2015, AECOM reported a net loss of $154.85 million, or $1.04 per diluted share, on revenue of $17.99 billion, compared to net income of $229.85 million, or $2.33 per diluted share, on revenue of $8.36 billion for fiscal year 2014.

44.     The FY 2015 8-K stated, in part:

"Fiscal 2015 was a remarkable year for AECOM," said Michael S. Burke, AECOM's chairman and chief executive officer. "We completed the largest combination in our industry's history. Despite the attention to integration and uneven global economic trends, our results and outlook reflect the benefits of our diversification."

"*We are reiterating our annual free cash flow target of $600 million to $800 million* and increasing our synergy target to $325 million," said Stephen M. Kadenacy, AECOM's president. "This is a sign of our increasing confidence in the combined business."

. . .

Free cash flow for the fourth quarter was $268 million. For the fiscal year, AECOM generated free cash flow of $695 million, which was within the company's target of $600 million to $800 million.

45.     On November 25, 2015, AECOM filed an Annual Report on Form 10-K with the SEC, reiterating the information previously announced in the FY 2015 8-K and reporting in full the Company's financial and operating results for the quarter and fiscal year ended September 31, 2015 (the "FY 2015 10-K").

46.     In the FY 2015 10-K, AECOM stated, in part:

Since the acquisition date, URS contributed $8.5 billion in revenue and $219.0 million in income from operations during the twelve months ended September 30, 2015. Amortization of intangible assets relating to URS was $361.6 million during the twelve months ended September 30, 2015 since the acquisition date. Additionally, included in equity in earnings of joint ventures and noncontrolling interests was intangible amortization expense of $37.3 million and $(26.6) million, respectively, during the twelve months ended September 30, 2015 related to joint venture fair value adjustments.

47.     The FY 2015 10-K contained signed certifications pursuant to SOX by Defendants Burke and Rudd, stating that the financial information contained in the FY

16

2015 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

48.     The statements referenced in ¶¶ 43 – 47 above were materially false and/or misleading because they misrepresented and/or failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) AECOM engaged in fraudulent and deceptive business practices (ii) AECOM lacked effective internal controls over financial reporting; (iii) AECOM overstated the benefits of the URS Acquisition; (iv) AECOM overstated the Company's free cash flow ("FCF") per share; and (v) as a result of the foregoing, AECOM's public statements were materially false and misleading at all relevant times.

49.     On December 10, 2015, United States Department of Justice attorneys for the Eastern District of New York issued a press release announcing a $20.2 million settlement with AECOM subsidiary Tishman Construction Corporation.   The press release stated in relevant part:

> Tishman Construction is charged with mail and wire fraud conspiracy for improperly billing its clients more than $5 million over a ten-year period for hours not worked and at rates that were in excess of the agreed upon contract rate.    Also, Tishman Construction entered into a deferred prosecution agreement with the Office in which *Tishman Construction admitted to fraudulently overbilling clients and agreed to pay more than $20 million in restitution to victims and penalties to the federal government.    The*

17

*company has additionally instituted far-reaching corporate reforms designed to eliminate future problems and enforce best industry practices.*

(Emphasis added)

50.    On this news, AECOM's stock fell $0.79, or 2.6%, to close at $29.42 on September 22, 2015.

51.    On February 9, 2016, AECOM filed a Current Report on Form 8-K with the SEC, announcing certain of the Company's financial and operating results for the quarter ended December 31, 2015 (the "Q1 2016 8-K").  For the quarter, AECOM reported a net loss of $20.37 million, or $0.13 per diluted share, on revenue of $4.30 billion, compared to a net loss of $103.50 million, or $0.73 per diluted share, on revenue of $4.19 billion for the same period in the prior year.

52.    The Q1 2016 8-K stated, in part: "Free cash flow for the first quarter was $77 million; on track to achieve full-year free cash flow target of $600 million to $800 million for fiscal years 2016 and 2017."

53.    On February 10, 2016, AECOM filed a Quarterly Report on Form 10-Q with the SEC, reiterating the information previously announced in the Q1 2016 8-K and reporting in full the Company's financial and operating results for the quarter ended December 31, 2015 (the "Q1 2016 10-Q").

54.    In the Q1 2016 10-Q, AECOM stated, in part:

Amortization of intangible assets relating to URS was $59.0 million and $99.0 million during the three months ended December 31, 2015 and 2014, respectively. Additionally, included in equity in earnings of joint ventures

18

and noncontrolling interests was intangible amortization expense of $9.7 million and ($5.7) million, respectively, during the three months ended December 31, 2015 and $8.1 million and ($9.5) million, respectively, during the three months ended December 31, 2014 related to joint venture fair value adjustments.

55.     The Q1 2016 10-Q contained signed certifications pursuant to SOX by Defendants Burke and Rudd, stating that the financial information contained in the Q1 2016 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

56.     On May 10, 2016, AECOM filed a Current Report on Form 8-K with the SEC, announcing certain of the Company's financial and operating results for the quarter ended March 31, 2016 (the "Q2 2016 8-K").  For the quarter, AECOM reported net income of $41.83 million, or $0.27 per diluted share, on revenue of $4.38 billion, compared to net income of $0.27 million, or zero per diluted share, on revenue of $4.51 billion for the same period in the prior year.

57.     The Q2 2016 8-K stated, in part: "Free cash flow for the second quarter was $83 million; on track with annual free cash flow target of $600 million to $800 million for fiscal years 2016 and 2017."

58.     On May 11, 2016, AECOM filed a Quarterly Report on Form 10-Q with the SEC, reiterating the information previously announced in the Q2 2016 8-K and reporting in full the Company's financial and operating results for the quarter ended March 31, 2016 (the "Q2 2016 10-Q").

19

59.    In the Q2 2016 10-Q, AECOM stated, in part:

Amortization of intangible assets relating to URS was $59.1 million and $93.4 million during the three months ended March 31, 2016 and 2015, respectively, and $118.1 million and $192.4 million during the six months ended March 31, 2016 and 2015, respectively. Additionally, included in equity in earnings of joint ventures and noncontrolling interests was intangible amortization expense of $6.5 million and $(3.9) million, respectively, during the three months ended March 31, 2016 and $9.7 million and $(5.7) million, respectively, during the three months ended March 31, 2015 related to joint venture fair value adjustments. Included in equity in earnings of joint ventures and noncontrolling interests was intangible amortization expense of $16.3 million and $(9.6) million, respectively, during the six months ended March 31, 2016 and $17.8 million and $(15.2) million, respectively, during the six months ended March 31, 2015 related to joint venture fair value adjustments.

60.    The Q2 2016 10-Q contained signed certifications pursuant to SOX by Defendants Burke and Rudd, stating that the financial information contained in the Q2 2016 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

61.    On August 9, 2016, AECOM filed a Current Report on Form 8-K with the SEC, announcing certain of the Company's financial and operating results for the quarter ended June 30, 2016 (the "Q3 2016 8-K").   For the quarter, AECOM reported net income of $67.44 million, or $0.43 per diluted share, on revenue of $4.41 billion, compared to net income of $17.19 million, or $0.11 per diluted share, on revenue of $4.55 billion for the same period in the prior year.

62.    The Q3 2016 8-K stated, in part:

"Our third quarter results were highlighted by accelerating growth in the Americas Design business, the eighth consecutive quarter of double-digit growth in Building Construction, a 3x book-to-burn5 in our Energy & Industrial Construction business, ***$191 million of free cash flow***, and $177 million of debt reduction," said Michael S. Burke, AECOM's chairman and chief executive officer.

. . .

Free cash flow4 for the third quarter was $191 million and is on track with annual free cash flow guidance of $600 million to $800 million for fiscal years 2016 and 2017.

63.    On August 10, 2016, AECOM filed a Quarterly Report on Form 10-Q with the SEC, reiterating the information previously announced in the Q3 2016 8-K and reporting in full the Company's financial and operating results for the quarter ended June 30, 2016 (the "Q3 2016 10-Q").

64.    In the Q3 2016 10-Q, AECOM stated, in part:

Amortization of intangible assets relating to URS was $35.9 million and $76.7 million during the three months ended June 30, 2016 and 2015, respectively, and $154.0 million and $269.0 million during the nine months ended June 30, 2016 and 2015, respectively. Additionally, included in equity in earnings of joint ventures and noncontrolling interests was intangible amortization expense of $3.3 million and $(2.1) million, respectively, during the three months ended June 30, 2016 and $9.7 million and $(5.7) million, respectively, during the three months ended June 30, 2015 related to joint venture fair value adjustments. Included in equity in earnings of joint ventures and noncontrolling interests was intangible amortization expense of $19.6 million and $(11.7) million, respectively, during the nine months ended June 30, 2016 and $27.6 million and $(20.8) million, respectively, during the nine months ended June 30, 2015 related to joint venture fair value adjustments.

65.     The Q3 2016 10-Q contained signed certifications pursuant to SOX by Defendants Burke and Rudd, stating that the financial information contained in the Q1 2016 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

66.     On August 10, 2016, after the market closed, AECOM filed an Amendment to its Annual Report for Fiscal Year 2015 on Form 10-K/A with the SEC (the "2015 10-K/A").  In the 2015 10-K/A, AECOM stated, in part:

> In our third quarter of fiscal year 2016, management discovered deficiencies associated with the acquisition of URS Corporation related to (a) the alignment of accounting policies specific to forward loss reserves and (b) income tax accounts. These deficiencies did not have a material impact on the Company's previously reported financial results for the year ended September 30, 2015, and the Company recorded in the third quarter of fiscal year 2016 an immaterial cumulative adjustment. Management has concluded that the presence of the deficiencies within the accounting process related to the business combination rose to a level of material weakness in our internal control over financial reporting as of September 30, 2015. As a result, management has revised its reporting on internal control over financial reporting from that previously reported in Item 9A of Part II, "Controls and Procedures," with respect to its conclusions regarding the effectiveness of our internal control over financial reporting.
>
> Our management communicated the results of its reassessment to the Audit Committee of our Board of Directors.
>
> Ernst & Young LLP has revised their previously issued audit report on our assessment of internal control over financial reporting . . . .

67.     The 2015 10-K/A also contained a report by Ernst & Young LLP, stating, in part:

22

A material weakness is a deficiency, or combination of deficiencies, in internal control over financial reporting, such that there is a reasonable possibility that a material misstatement of the company's annual or interim financial statements will not be prevented or detected on a timely basis. The following material weakness has been identified and included in management's assessment. ***Management has identified a material weakness in controls over the accounting for the acquisition of URS Corporation related to a) the alignment of accounting policies specific to forward loss reserves and b) income tax accounts.***

. . .

In our opinion, because of the effect of the material weakness described above on the achievement of the overall control objectives, ***AECOM has not maintained, in all material respects, effective internal control over financial reporting as of September 30, 2015*** . . . .

(Emphases added.)

68.    The statements referenced in ¶¶ 49 – 67 above were materially false and/or misleading because they misrepresented and/or failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) AECOM engaged in fraudulent and deceptive business practices (ii) AECOM lacked effective internal controls over financial reporting; (iii) AECOM overstated the benefits of the URS Acquisition; (iv) AECOM overstated the Company's free cash flow ("FCF") per share; and (v) as a result of the foregoing, AECOM's public statements were materially false and misleading at all relevant times.

23

### The Truth Emerges

69.    On August 16, 2016, Spruce Point published a report on AECOM, stating that "after a careful forensic financial and accounting analysis of AECOM's recent financial results and condition, we believe that AECOM's stock is worth approximately 33% - 45% less than its current price."   The Spruce Point Report asserted that the Company's recent filing of the 2015 10-K/A had not addressed all of the issues associated with the URS Acquisition, and summarized its findings, in part, as follows:

- **Trying to downplay this issue, AECOM stated further that:** ""These deficiencies did not have a material impact on the Company's previously reported financial results for the year ended September 30, 2015, and the Company recorded in the third quarter of fiscal year 2016 an immaterial cumulative adjustment."

- **Given recent disclosures, Spruce Point felt it necessary to make our analysis public with the goal of allowing investors to assess how material AECOM's accounting issues are. In our opinion, investors should be very concerned about the following issues:**

   o AECOM's Adjusted EPS vs. GAAP Results Are Wildly Diverging: AECOM has changed its EPS definition three times since selling investors on the URS deal. Not surprisingly, each change makes the number more inflated. AECOM is now adding back "noncore operating losses" and "expected and actual asset sales" even though it told investors no divestitures were planned at deal inception. Even more alarming, in Q2'16 it booked pension curtailment gains to revenue and EPS to claim an earnings beat!

   o AECOM Has Incessantly Changed the URS Purchase Price Allocation: Even though GAAP says that final intangible and goodwill allocation has to be completed within 12 months of closing, AECOM is still making changes 18 months later!

      . . .

24

     o  <u>Free Cash Flow Appears Overstated</u>: AECOM has shown three different definitions of Free Cash Flow! In the proxy it showed URS's free cash flow as adjusted for noncontrolling distributions, a definition we view as accurate. It currently does not remove distributions, and later changed to "capital expenditures net of asset sales." In our view, this adjustment is very aggressive and not common. Lastly, we note that AECOM includes accounts receivable financing activities, as well as excess joint venture dividends above equity earnings, as part of operating cash flow. By adjusting for these items and distributions to noncontrolling interests, **we believe free cash flow is overstated by approximately 90% in the LTM ending June 30th[.]**

(Emphases in original.)

70.    On this news, AECOM stock fell $1.65, or 4.7%, to close at $33.44 on August 16, 2016, damaging investors.

71.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

72.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired AECOM common shares traded on the NYSE during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal

representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

73.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, AECOM common shares were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by AECOM or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

74.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

75.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

76.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

26

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of AECOM;
- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;
- whether the Individual Defendants caused AECOM to issue false and misleading SEC filings and public statements during the Class Period;
- whether Defendants acted knowingly or recklessly in issuing false and misleading SEC filings and public statements during the Class Period;
- whether the prices of AECOM common shares during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and
- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

77.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

78.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;
- the omissions and misrepresentations were material;

27

- AECOM common shares are traded in efficient markets;
- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;
- the Company traded on the NYSE, and was covered by multiple analysts;
- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's common shares; and
- Plaintiff and members of the Class purchased and/or sold AECOM common shares between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

79. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

80. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### Violation of Section 10(b) of The Exchange Act and Rule 10b-5
### Against All Defendants

81. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

82. This Count is asserted against AECOM and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

83. During the Class Period, AECOM and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

84. AECOM and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;
- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of AECOM common shares during the Class Period.

85. AECOM and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of AECOM were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or

documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of AECOM, their control over, and/or receipt and/or modification of AECOM allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning AECOM, participated in the fraudulent scheme alleged herein.

86.    Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other AECOM personnel to members of the investing public, including Plaintiff and the Class.

87.    As a result of the foregoing, the market price of AECOM common shares was artificially inflated during the Class Period. In ignorance of the falsity of AECOM's and the Individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of AECOM common shares during the Class Period in purchasing AECOM common shares at prices that were artificially inflated as a result of AECOM's and the Individual Defendants' false and misleading statements.

88.   Had Plaintiff and the other members of the Class been aware that the market price of AECOM common shares had been artificially and falsely inflated by AECOM's and the Individual Defendants' misleading statements and by the material adverse information which AECOM's and the Individual Defendants did not disclose, they would not have purchased AECOM's common shares at the artificially inflated prices that they did, or at all.

89.   As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

90.   By reason of the foregoing, AECOM and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of AECOM common shares during the Class Period.

**COUNT II**

**Violation of Section 20(a) of The Exchange Act**
**Against The Individual Defendants**

91.   Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

92.   During the Class Period, the Individual Defendants participated in the operation and management of AECOM, and conducted and participated, directly and indirectly, in the conduct of AECOM's business affairs. Because of their senior

31

positions, they knew the adverse non-public information regarding AECOM's business practices.

93.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to AECOM's financial condition and results of operations, and to correct promptly any public statements issued by AECOM which had become materially false or misleading.

94.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which AECOM disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause AECOM to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of AECOM within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of AECOM common shares.

95.     Each of the Individual Defendants, therefore, acted as a controlling person of AECOM. By reason of their senior management positions and/or being directors of AECOM, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, AECOM to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the

general operations of AECOM and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

96.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by AECOM.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post- judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: September 1, 2016

Respectfully submitted,

**POMERANTZ LLP**

By: *s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
468 North Camden Drive
Beverly Hills, CA 90210
Telephone:  (818) 532-6499
E-mail: jpafiti@pomlaw.com

**POMERANTZ, LLP**
Jeremy A. Lieberman
J. Alexander Hood II
Marc C. Gorrie
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:(212) 661-8665
E-mail: jalieberman@pomlaw.com
E-mail: ahood@pomlaw.com
E-mail: mgorrie@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
Ten South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:   (312) 377-1184
E-mail: pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.   I,  William Grover , make this declaration pursuant to Section

27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange

Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2. I have reviewed a Complaint against AECOM ("AECOM" or the "Company"), and authorize the

filing of a comparable complaint on my behalf.

3. I did not purchase or acquire AECOM securities at the direction of plaintiffs counsel or in order to

participate in any private action arising under the Securities Act or Exchange Act.

4.   I am willing to serve as a representative party on behalf of a Class of investors who purchased or

acquired AECOM securities during the class period, including providing testimony at deposition and trial, if

necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.  To the best of my current knowledge, the attached sheet lists all of my transactions in AECOM

securities during the Class Period as specified in the Complaint.

6.  During the three-year period preceding the date on which this Certification is signed, I have not

sought to serve as a representative party on behalf of a class under the federal securities laws.

7.   I agree not to accept any payment for serving as a representative party on behalf of the class as set

forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses

directly relating to the representation of the class as ordered or approved by the Court.

8.   I declare under penalty of perjury that the foregoing is true and correct.

**Executed**   _29 Aug 2016_
   (Date)

_William Graves_
   (Signature)

_William Graves_
   (Type or Print Name)

**AECOM (ACM)**                                                                 **Graves, William**

## LIST OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHS/UTS | PRICE PER SH/UT |
|------|------------------|-------------------|-----------------|
| 8/15/2016 | Purchase | 100 | $35.0587 |